Hillsborough-northern judicial district
No. 2007-074

## RALPH R. JOYCE

v.

## TOWN OF WEARE

Argued: October 18, 2007
Opinion Issued: December 7, 2007

*Prunier & Prolman, P.A.*, of Nashua (*Andrew A. Prolman* on the brief and orally), for the petitioner.

*Drescher & Dokmo, P.A.*, of Milford (*William R. Drescher* on the brief and orally), and *Devine, Millimet & Branch, P.A.*, of Manchester (*Brian J.S. Cullen* on the brief), for the respondent.

DUGGAN, J. The petitioner, Ralph R. Joyce, appeals an order of the Superior Court (*Barry*, J.) dismissing his petition for review of a decision of the Town of Weare Planning Board for lack of standing. We affirm.

The record supports the following facts. On May 13, 2003, Joyce entered into a purchase and sale agreement with Michael Durgin for a parcel of land located in the Town of Weare (Town). They intended to subdivide the property into residential lots. To achieve this end, Joyce obtained a power of attorney from Durgin and his wife, Diane, granting him authority to "petition and appear in front of the ... Planning Board ... to garner subdivision approval and building permits" for the property. Under the terms of the purchase and sale agreement, Joyce was also required to "negotiate[] and contract[] for services necessary for the study and analysis of the subject parcel" so that an application for subdivision could be filed "on or about September 15, 2003."

For various reasons, Joyce failed to submit the subdivision application to the planning board until March 5, 2004. On March 9, 2004, however, the Town adopted an interim growth management ordinance (IGMO), which for a one-year period prohibited the planning board from formally accepting or acting upon "any site plan applications for single family housing, multi-family housing, mobile home parks or condominiums ... or any other major subdivision applications creating a total of more than 3 lots." *Weare Land Use Assoc. v. Town of Weare*, 153 N.H. 510, 510 (2006). Accordingly, because Joyce's subdivision application called for more than three lots, the planning board tabled the proposal until after the expiration of the one-year IGMO.

On July 7, 2004, Joyce and Durgin responded by jointly filing a petition challenging the constitutionality of the IGMO's one-year moratorium on subdivision applications. On June 10, 2005, the parties amended the petition to also challenge the constitutionality of several of the permanent growth management ordinances enacted by the Town following expiration of the IGMO.

The purchase and sale agreement between Joyce and Durgin lapsed in January 2006 and, because their relationship had deteriorated, was not extended. As a result, the Durgins revoked the power of attorney and Durgin moved for voluntary nonsuit of his claims. On September 18, 2006, the trial court granted the motion, thus ending Durgin's involvement in this case. Durgin has since retained a new engineering company and,

without Joyce's involvement, submitted a separate subdivision application for the property to the planning board.

On September 12, 2006, the Town filed a motion to dismiss, arguing, among other things, that Joyce now lacks standing to continue with his petition because he no longer has any interest in the property. On that same day, Joyce filed a civil suit against Durgin, challenging the termination of the purchase and sale agreement and asserting claims for conversion, unjust enrichment, reformation, breach of contract, and specific performance. See Joyce v. Durgin, Hills. Cty. Super. Ct., Northern District, No. 06-E-0425. In his objection to the Town's motion to dismiss, Joyce contended that he has standing in this case because he could ultimately obtain an interest in the property through successful prosecution of Joyce v. Durgin. Joyce also argued that he has standing because he made significant investments in the creation of his subdivision application.

On December 12, 2006, the trial court granted the Town's motion to dismiss, ruling that Joyce lacks a direct, definite, and personal interest in the outcome of this case. The trial court noted that Joyce "no longer holds any interest in the actual property," "no longer has any right to pursue a subdivision of the property," and, thus, is "in essence, pursuing an appeal on a subdivision application that no longer exists." Moreover, the court determined that Joyce's "mere assertion of certain expenditures is insufficient to demonstrate that he possesses a direct and definite interest in" the outcome of this case. Finally, the court explained that, if Durgin improperly terminated the purchase and sale agreement, the civil suit against Durgin was the proper avenue through which to recover damages, not a planning board appeal.

Joyce moved to reconsider, arguing that he has standing because dismissal of his planning board appeal would "completely undermine[]" his ability to obtain the remedies potentially available to him in Joyce v. Durgin; namely, specific performance and equitable reformation. In addition, Joyce argued, for the first time, that the trial court should stay his petition pending resolution of Joyce v. Durgin. The trial court denied the motion. Joyce now appeals.

I

█ Pursuant to RSA 677:15, I, "persons aggrieved" by a planning board decision have standing to file a petition for review of that decision in the superior court. RSA 677:15, I (Supp. 2007); Nautilus of Exeter v. Town of Exeter, 139 N.H. 450, 452 (1995). To be considered a person aggrieved, a litigant must have a "direct definite interest in the outcome of the proceedings." Goldstein v. Town of Bedford, 154 N.H. 393, 395 (2006).

■ To determine whether a party's interest in the outcome of a planning board proceeding is sufficiently direct and definite to bestow standing, the trial court must conduct a factual inquiry. *Nautilus of Exeter*, 139 N.H. at 452. In so doing, "the trial court may consider factors such as the proximity of the plaintiff's property to the site for which approval is sought, the type of change proposed, the immediacy of the injury claimed, and the plaintiff's participation in the administrative hearings." *Id.* (quotation and citation omitted). Ultimately, when a party's motion to dismiss "challenges the plaintiff's standing to sue, the trial court must look beyond the plaintiff's unsubstantiated allegations and determine, based on the facts, whether the plaintiff has sufficiently demonstrated his right to claim relief." *Ossipee Auto Parts v. Ossipee Planning Board*, 134 N.H. 401, 403-04 (1991) (citation omitted). However, when the underlying facts are not in dispute, we review the trial court's determination *de novo*. *ACG Credit Co. v. Gill*, 152 N.H. 260, 261 (2005).

In his petition, Joyce is challenging the constitutionality of ordinances that govern and affect land located in the town of Weare. As a general rule, such constitutional arguments cannot be raised by a party unless "the party's own rights have been or will be directly affected." *Hughes v. N.H. Div. of Aeronautics*, 152 N.H. 30, 35 (2005) (citation omitted). However, the record does not indicate that Joyce owns any property affected by the challenged ordinances. *See Nautilus of Exeter*, 139 N.H. at 452. The only interest that Joyce has ever had in challenging the constitutionality of the town ordinances arose from his contractual arrangement with Durgin. Thus, his standing has up to this point relied upon his status as a contract vendee.

■■ Contract vendees can have standing to appeal planning board decisions because, theoretically, "it is the vendor's rights which are being determined and the vendee [is] considered [to be] acting as agent for his vendor and with the latter's consent." *Romeskie v. Chapin*, 262 N.Y.S.2d 756, 757 (Sup. Ct. 1965). In this case, however, it is undisputed that all the contracts Joyce has relied upon for standing are no longer in effect. Both the power of attorney and the purchase and sale agreement have been terminated. In addition, the contract vendor, Durgin, has withdrawn as a party to the petition. It can therefore no longer be said that Joyce is operating as an "agent for his vendor," *id.*, or, more to the point, that Joyce has standing as a contract vendee. *See Goldfeld v. Planning & Zoning Com'n.*, 486 A.2d 646, 649 (Conn. App. Ct. 1985) (dismissing a zoning commission appeal for lack of standing where the appellant's option to purchase the subject parcel ceased six weeks prior to the trial court's judgment in the appellant's favor); *Romeskie*, 262 N.Y.S.2d at 757-58

(holding that a contract vendee lacked standing to appeal a zoning board decision where the contract vendor alleged that the agreement between the parties was, by its terms, null and void).

Because he can no longer maintain standing as a contract vendee, Joyce must demonstrate he has some other sufficient interest in the outcome of this case. *See Goldstein*, 154 N.H. at 395. To meet this burden, Joyce asserts that he has standing because: (1) he could potentially obtain an interest in the property at some later point through his prosecution of *Joyce v. Durgin*; (2) he has made substantial investments in the actual subdivision application; and (3) dismissal of this case would undermine his ability to recover certain remedies he is seeking in *Joyce v. Durgin*. Joyce also argues, in the alternative, that the trial court erred by failing to stay this case until the conclusion of *Joyce v. Durgin*. We address each argument in turn.

■ First, Joyce's assertion that he has standing in this appeal simply because, at some later point, he could potentially obtain an interest in the property through his prosecution of *Joyce v. Durgin* is without merit. Admittedly, Joyce is seeking certain equitable remedies against Durgin which, if obtained, might give him a sufficient interest in the property to have standing in this case. But, at this time, *Joyce v. Durgin* remains pending and it is uncertain whether Joyce will ultimately be successful in obtaining those remedies. Such a speculative interest in the property does not give rise to a "definite" interest in the outcome of this appeal. *See Nautilus of Exeter*, 139 N.H. at 452; *see also* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 592 (unabridged ed. 2002) (defining "definite" as that which is "identified or immediately identifiable"). We thus reject Joyce's argument that he can have standing today merely because he could obtain a sufficient interest in the outcome of this case at some point in the future. *See* 15 P. LOUGHLIN, NEW HAMPSHIRE PRACTICE, LAND USE PLANNING AND ZONING § 33.01, at 468 (2000) (explaining how our standing doctrine requires the litigant to have a "concrete adverseness"). Moreover, because the pendency of *Joyce v. Durgin* is not relevant here, we reject the contention raised throughout Joyce's brief that the trial court erred by failing to consider the validity of his claims in that case.

■ Second, we do not agree with Joyce that he has standing in this appeal by mere virtue of the "investment made to date into his subdivision application." Joyce does not argue in his brief that he is attempting to recover damages from the Town itself. Indeed, he admits that he will "not have any claim to pursue the subdivision or the constitutional issues presented with respect to the Weare zoning ordinances" if he is

unsuccessful in his claims against Durgin. Instead, Joyce argues that he has standing to maintain his petition because he made investments in the subdivision application and, thus, has a direct interest in the determination of whether the ordinances legally applied to that subdivision. However, as noted above, the contracts which gave Joyce authority to pursue the subdivision are no longer in effect and Durgin has filed a separate subdivision application for the property. Therefore, even if we were to permit this case to proceed and the ordinances were ruled unconstitutional, there would be no direct effect on the subdivision application and, thus, no direct benefit to Joyce. *See Nautilus of Exeter*, 139 N.H. at 452. While we have extended our standing doctrine in planning board appeals, *see Weeks Rest. Corp. v. City of Dover Sambo's Rest.*, 119 N.H. 541, 545 (1979) (interpreting the predecessor to RSA 677:15); *Price v. Planning Board*, 120 N.H. 481, 484 (1980), we have never gone so far as to allow standing where litigants have no direct interest in the outcome of their appeals. Accordingly, Joyce's investment in the actual subdivision application is insufficient to give him standing to bring this planning board appeal. *Price*, 120 N.H. at 484.

Third, Joyce argues that he has standing because dismissal of this action will somehow "completely undermine" his ability to obtain certain equitable remedies in *Joyce v. Durgin*. We fail to see how our holding today will so hinder Joyce in pursuing relief in *Joyce v. Durgin*. Moreover, we have not found, and Joyce has not provided, any authority that supports the proposition that such considerations should factor into our standing analysis. We therefore conclude that Joyce does not have standing on these grounds.

Finally, we reject Joyce's argument that the trial court erred by failing to stay this case until resolution of *Joyce v. Durgin*. Because the trial court determined that Joyce did not have standing, it did not err by failing to grant Joyce's motion to stay.

## II

While Joyce previously had standing to bring the planning board appeal as a contract vendee, the contract upon which his standing relied has been terminated. That Joyce is currently challenging that termination in a separate civil proceeding is of no consequence because, even if he will ultimately be successful, he has failed to "sustain his interest in the property involved throughout the course of [this] appeal." *Goldfeld*, 486 A.2d at 649; *see also* 1A C.J.S. *Actions* § 76, at 290 (2005) ("the requisite personal interest, or standing, that existed at the commencement of the litigation must continue throughout its existence in order for the litigation not to become moot"). Because he has failed to demonstrate that he has

other grounds for standing beyond his defunct interest as a contract vendee, Joyce does not possess the type of "concrete adverseness that is essential to proper judicial resolution of the issues." LOUGHLIN, *supra* § 33.01, at 468. Accordingly, we affirm the trial court's order dismissing his petition.

*Affirmed.*

BRODERICK, C.J., and DALIANIS, GALWAY and HICKS, JJ., concurred.