**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2022-0214, <u>John Doe v. New Hampshire Division of State Police & a.</u>, the court on December 3, 2024, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, and has determined to resolve the case by way of this order. <u>See</u> <u>Sup. Ct. R.</u> 20(2). The plaintiff, John Doe, appeals an order of the Superior Court (<u>Schulman</u>, J.) granting the motion to dismiss filed by the defendants, the New Hampshire Division of State Police and the New Hampshire Attorney General's Office (AGO). The plaintiff sought declaratory judgment that his name is not appropriate for inclusion on the Exculpatory Evidence Schedule (EES) and injunctive relief to remove his name from the EES. <u>See</u> RSA 105:13-d (2023). He argues that the conduct which led to his placement on the EES, that is, his intentional misrepresentation of facts to a tribunal, does not rise to the level of potentially exculpatory evidence due to the passage of time. We affirm.

I.    <u>Background</u>

The following facts are derived from the complaint, which we accept as true, or from documents sufficiently referred to in the complaint and whose authenticity no party disputes. <u>See</u> <u>Beane v. Dana S. Beane & Co.</u>, 160 N.H. 708, 711-12 (2010). Over fourteen years ago, the plaintiff, a state trooper, received an email from the Department of Safety, Bureau of Hearings directing him to appear at an Administrative License Suspension (ALS) hearing. The plaintiff did not attend the hearing, and the case was dismissed due to the State's failure to appear. The Bureau of Hearings notified the plaintiff by email that he would have ten days to request that the case be re-opened. The plaintiff requested that the case be re-opened because he had "never received a hearing notice in this case." At a subsequent hearing, and while under oath, the plaintiff testified that he

> was never notified for the first hearing, never received notice. Our notices go out through the e-mail system and is not problem proof. We do have our issues with the e-mail. The first e-mail I got on this was the e-mail that there was a hearing and I wasn't there, so I was notified that I had ten days to respond to that and my response was I was never notified through the e-mail system of this hearing . . . of the first hearing, this being the reason I was not

there.  I sent an e-mail back immediately saying that, again, I was never notified and to reopen the case.

The State Police investigated whether the plaintiff was untruthful in his testimony, concluded that he was, and notified the plaintiff that he would be suspended without pay for eleven days.  The plaintiff appealed the matter to the New Hampshire Personnel Appeals Board (PAB).  Following a hearing, the PAB found that when the plaintiff testified that he had not received any email regarding the ALS hearing before receiving the email that "there was a hearing and [he] wasn't there," the plaintiff knew that an earlier email existed, that it was delivered, that someone had opened the email, and that he himself later deleted that email.  The PAB concluded that "the [plaintiff's] assertion, under oath, that he never received [an] email notifying him of the [first] ALS hearing constitutes an intentional misrepresentation of facts."  The plaintiff filed an appeal with this court, which we declined to accept.  The plaintiff's name was added to the EES on or about June 3, 2010.  Since then, the circuit court in two separate criminal cases has ruled that the plaintiff's conduct was not exculpatory and his personnel information was not disclosed to the defendants.

Thereafter, the plaintiff filed suit, seeking his removal from the EES pursuant to RSA 105:13-d, II.  The plaintiff requested a ruling that the information in his personnel file "is no longer exculpatory or probative in value for any future litigation," or, in the alternative, a hearing on the "underlying facts and circumstances that were relied upon in determining the necessitation of inclusion of [his] name on the EES."  Defendant Division of State Police moved to dismiss the complaint, and defendant AGO joined the motion.  The trial court granted the motion to dismiss, ruling: (1) that the plaintiff was not entitled to any further evidentiary proceedings because "the plaintiff was afforded with a panoply of due process rights at the time his conduct was adjudicated with finality"; and (2) that the plaintiff "shall remain on the EES" because, despite the age of the misconduct and the plaintiff's exemplary career, "in a case in which guilt or innocence will turn on the plaintiff's credibility, the plaintiff's history of providing false testimony will have significant probative value." The trial court denied the plaintiff's motion for reconsideration, and this appeal followed.

II.    Analysis

The plaintiff does not challenge the trial court's ruling that he was not entitled to any further evidentiary proceedings, but argues that the trial court erred when it ruled that he should remain on the EES.  When reviewing a trial court's ruling on a motion to dismiss, we consider whether the allegations in the pleadings are reasonably susceptible of a construction that would permit recovery.  N.H. Ctr. for Pub. Interest Journalism v. N.H. Dep't of Justice, 173 N.H. 648, 652 (2020).  We assume the pleadings to be true and construe all reasonable inferences in the light most favorable to the plaintiff.  Id.  We then

engage in a threshold inquiry that tests the facts in the complaint against the applicable law.  Id.  We will uphold the granting of a motion to dismiss if the facts pled do not constitute a basis for legal relief.  Barufaldi v. City of Dover, 175 N.H. 424, 427 (2022).

RSA 105:13-d provides that the New Hampshire Department of Justice "may voluntarily maintain" an EES which "shall consist of a list of all current or former law enforcement officers whose personnel information contain potentially exculpatory evidence."  RSA 105:13-d, I; see N.H. Ctr. for Pub. Interest Journalism, 173 N.H. at 651 (noting that the EES is "a list of police officers who have engaged in misconduct reflecting negatively on their credibility or trustworthiness").  The statute further provides that the individual's name and corresponding information on the EES will become public unless "a court issues an order finding that the underlying misconduct is not potentially exculpatory" or "[a] court issues an order finding that the law enforcement agency erred in recommending that the officer be placed on the [EES]."  RSA 105:13-d, II(d)(1)-(2).

The plaintiff asserts that the New Hampshire Rules of Evidence recognize that evidence which is over ten years old may no longer be material, relevant or probative in value, and that this is "important when examining potentially exculpatory evidence in a police officer's personnel file that is more than ten years old, because the passage of time has made that evidence stale."  New Hampshire Rule of Evidence 609(b) imposes a heightened standard for admitting evidence of a prior criminal conviction as impeachment evidence when the conviction is more than ten years old.  See N.H. R. Ev. 609(b) (providing in part that evidence of a prior criminal conviction that is more than ten years old is admissible as impeachment evidence only if its probative value substantially outweighs its prejudicial effect).  The plaintiff urges us to "adopt the concepts of the New Hampshire Rules of Evidence, Rule 609" and hold that an officer's name should be removed from the EES after ten years have passed from the date of the conduct which led to the officer being added to the list, provided there are no further incidents bearing upon the officer's general credibility.

We addressed the same argument in a recent opinion, in which we held that "within the context of RSA 105:13-d, 'potentially exculpatory evidence' is evidence, including impeachment evidence, that is reasonably capable of being material to guilt or to punishment."  Doe v. N.H. Attorney Gen. (Activity Logs), 176 N.H. ___, ___ (2024), 2024 N.H. 50, ¶19.  In Doe v. N.H. Attorney Gen. (Activity Logs), we stated that we "agree[d] with the plaintiffs that considerations made to determine the admissibility of evidence, such as the age of the conduct and its materiality to an officer's general credibility, should factor into the determination of whether information in an officer's personnel file warrants his or her inclusion on the EES."  Id.  at ___, 2024 N.H. 50, ¶20 (emphasis added).  However, we did not adopt a per se rule that an officer's

name should be removed from the EES after ten years have passed from the date of the conduct which led to the officer being added to the list, provided there are no further incidents bearing upon the officer's general credibility. Rather, we stated that "in any particular case, <u>factors such as the nature and age of the conduct</u> are relevant for the purpose of determining whether information in a personnel file pertaining to an officer is exculpatory and thus subject to <u>Brady</u> disclosures." <u>Id</u>. at ___, 2024 N.H. 50, ¶22 (emphasis added). Therefore, "such considerations should factor into the determination of whether specific conduct is <u>potentially</u> exculpatory for the purposes of RSA 105:13-d." <u>Id</u>. at ___, 2024 N.H. 50, ¶22.

At issue in <u>Doe v. N.H. Attorney Gen. (Activity Logs)</u> was whether the trial court erred in dismissing the plaintiffs' complaint challenging their placement on the EES because the plaintiffs had "inflated their enforcement action on the activity logs" in order to comply with a mandated number of traffic stops per shift. <u>Id</u>. at ___, 2024 N.H. 50, ¶2 (quotation omitted). It was unclear whether the plaintiffs' conduct "represented a mistaken interpretation of reporting requirements" and we could not determine from the record whether the plaintiffs "knowingly submitted activity logs with false information or that the plaintiffs acted dishonestly." <u>Id</u>. at ___, 2024 N.H. 50, ¶23. We therefore remanded the case, stating:

> [T]o determine whether the information in the plaintiffs' personnel files is "potentially exculpatory," RSA 105:13-d, I, the trial court should consider whether there is a reasonably foreseeable case in which the information would be admissible as exculpatory evidence or could be used to impeach the plaintiffs' credibility. The trial court should weigh, among the factors it deems appropriate, the age and nature of the conduct to determine the possible relevance such information may have in a future criminal case.

<u>Id</u>. at ___, 2024 N.H. 50, ¶24.

In this case, there is no dispute regarding the nature of the plaintiff's conduct. It is clear from the plaintiff's complaint and the PAB's findings that the plaintiff: (1) deleted the email he received from the Bureau of Hearings on the same day he received notice of default due to the State's failure to appear at the hearing; (2) wrote an email on the day he received the notice of default stating that he "never received a hearing notice in this case"; (3) testified at a subsequent hearing that he "was never notified for the first hearing" and that the first email he received regarding the matter "was the e-mail that there was a hearing and [he] wasn't there"; and (4) was found by the PAB to have "made an intentional misrepresentation of facts when testifying under oath" at the subsequent hearing. In light of these undisputed facts, we conclude that while the misconduct occurred over ten years ago and, according to the trial court, the plaintiff "apparently had an exemplary career as a trooper" since then, the

misconduct is nevertheless potentially exculpatory impeachment evidence "that is reasonably capable of being material to guilt or to punishment." Cf. Doe v. Salem Police Dep't (Off-duty Speeding), 177 N.H. ___, ___ (2024), 2024 N.H. 54, ¶¶20-21 (concluding that removal from EES was warranted because plaintiff's conduct was not potentially exculpatory evidence, where "nothing in the complaint or accompanying documentation suggest[ed] that the plaintiff acted dishonestly or attempted to conceal his conduct," and conduct was over ten years old).

We agree with the trial court that

[i]n cases in which the plaintiff is a witness to largely uncontested facts, the probative value of cross-examination relating to the misconduct may be minimal. However, in a case in which guilt or innocence will turn on the plaintiff's credibility, the plaintiff's history of providing false testimony will have significant probative force.

Accordingly, there is a basis for keeping the plaintiff's name on the list. See Gantert v. City of Rochester, 168 N.H. 640, 650 (2016) (concluding that even if plaintiff did not intentionally falsify information, plaintiff's supplying answers he had no basis to believe were true on Lethality Assessment Protocol form "is certainly enough of a reflection on the plaintiff's general credibility to trigger at least a prosecutor's obligation to disclose such information to a court for in camera review in a case in which the plaintiff will appear as a state witness").

We disagree with the plaintiff that the trial court unsustainably exercised its discretion when it "failed to give serious consideration to prior judicial determinations" that the information contained in the plaintiff's personnel file was not exculpatory. That the circuit court concluded that disclosure of that information to the criminal defendants in two separate criminal proceedings was not required does not necessarily mean that the court concluded that the information was not "potentially exculpatory," and that plaintiff's name should be removed from the EES. Whether particular information is exculpatory turns on the unique facts and circumstances within any given criminal case. See Doe v. N.H. Attorney Gen. (Activity Logs), 176 N.H. at ___, 2024 N.H. 50, ¶20 (noting that "the question of whether evidence is appropriate for inclusion on the EES is separate from the question of whether that evidence would be admissible in a criminal proceeding").

We have considered the plaintiff's remaining arguments and have concluded that they do not warrant further discussion. See Vogel v. Vogel, 137 N.H. 321, 322 (1993).

Affirmed.

MACDONALD, C.J., and BASSETT, DONOVAN, and COUNTWAY, JJ., concurred.

**Timothy A. Gudas,
Clerk**